PEOPLE OF PORTO RICO, Plaintiff and Appellee, v. PABLO VELÁZQUEZ and CECILIO CEDRÉS, Defendants and Appellants.

No. 2704. Argued April 30, 1926.—Decided June 23, 1926.

Luis Muñoz Morales for the appellants. José E. Figueras, Fiscal, for the appellee.

MR. JUSTICE FRANCO SOTO delivered the opinion of the court.

Pablo Velázquez and Cecilio Cedrés were convicted and sentenced to ten days in jail each for violating section 1 of the Act of March 10, 1910, providing punishment for adulterating milk.

The information charged that the said defendants "unlawfully, wilfully and maliciously had and offered for sale cow's milk adulterated with water."

The assignments of error set up by the appellants are as follows:

"1. The district court erred in convicting the defendants of the offense charged.

"2. That court erred in holding that the report made by the director of the chemical laboratory was conclusive evidence of the adulteration of the milk."

The second assignment raises a question that has been decided in the cases of *People* v. *Vilá,* 24 P.R.R. 396, and *People* v. *Rivera,* 31 P.R.R. 613. The report of the chemical laboratory was admitted without objection and shows that the milk examined was adulterated by the addition of 14 per cent of water. The defendants were given a sample of the milk when the seizure was made, but raised no objection to the Government's report as being erroneous.

Under the first assignment it is contended that the evidence did not show guilt on the part of the defendants, and that the milk had not been delivered to the owner of the milk-stand, nor received by him, nor offered for sale to consumers.

In addition to the report of the chemical laboratory the testimony of José Fonfrías and Ramón Galindes was examined for the prosecution. Fonfrías testified that he was the health inspector who took samples of the milk sent by Pablo Velázquez to Galindes, the owner of a milk-stand in Santurce. This witness explained the manner in which he took the samples when the milk-wagon arrived at the milk-stand. He testified that from one of the cans which he ordered to be set aside, marked "Pablo Velázquez, Carolina," he broke the seal and filled three similar containers, delivering one of them to Cecilio Cedrés, the driver, to be delivered to Velázquez and sending the other two to the chemical laboratory, and that he asked Cedrés who was the owner of the milk and was informed that the milk belonged to Pablo Velázquez. On

cross-examination the witness said that the milk had not been put on sale when he took the samples.

The other witness testified that he was engaged in the sale of milk and had a milk-stand in Santurce; that he was present when inspector Fonfrías took samples of the milk sent by Velázquez and brought by Cecilio Cedrés; that the milk was seized by the inspector when a can containing it was placed on the sidewalk; that he had no instructions from Velázquez about the milk received from him before it was put on sale; that Velázquez had told him that he could return any milk that might be found weak; that the milk examined by the health inspector was taken into his milk-stand on that day and as on examination it proved to be weak and its sale would have proven to be bad business, the said milk was taken out to be returned.

The evidence establishes beyond all doubt the guilt of defendant Pablo Velázquez, but there is nothing in it to show guilt on the part of defendant Cecilio Cedrés, the cart-driver, there being nothing in the information from which it could be deduced that he was a party to the offense.

Notwithstanding this, appellant Velázquez insists that according to the cases of *People* v. *Calderón*, 17 P.R.R. 459; *People* v. *Gautier*, 20 P.R.R. 311, and *People* v. *Andino*, 21 P.R.R. 211, there is no evidence of his having offered for sale the milk which proved to be adulterated. In the first place, we agree with the *Fiscal* that most of the jurisprudence cited is not applicable, for it refers to charges against the owners of milk-stalls, while the information herein is against the owner of the milk that was being sent to the owner of the milk-stand in sealed cans bearing the owner's name. The *Calderón Case, supra,* seems to refer more to facts similar to those in this case. In it this court held as follows:

"It was sufficiently proved that the milk came from the dairy of the appellant, the can from which the milk was taken by the inspector being shown to bear the name of the appellant and witnesses having testified to the transfer of the can from the possession of the

appellant to the possession of such inspector. Appellant insists that he did not adulterate the milk, and there was no proof of his intervention; but the selling of adulterated milk is the statutory crime prohibited and proved. It makes no difference whether the appellant's intent was fraudulent, as the statute makes it incumbent on every seller of milk to sell nothing but pure milk if he desires to avoid the rigors of the law.''

The case of *People* v. *Martínez,* 32 P.R.R. 272, wherein the sample of the milk was taken from the cart in which it was conveyed, is also cited, but the facts in that case were different since the milk was not shown to be sold to any milk-shop, nor was evidence produced of any fact showing that it was being offered for sale, which was the only charge made.

In the second place, the information in this case charges two different and independent manners in which the offense was committed, and one of them is that the accused kept for sale milk adulterated with water. By sending the milk from his dairy in sealed cans with his name thereon Velázquez showed that he had or kept it for sale. The testimony of Galindes does Velázquez no good, inasmuch as he asserted positively that he used to buy milk from Velázquez, but that he did not receive any instructions relative thereto to be complied with before the said milk was put on sale.

In an additional brief the appellants contend that should their conviction be affirmed the judgment should be modified in the sense of imposing fines instead of sentencing them to imprisonment, inasmuch as Act No. 59 of March 10, 1910, which provides as punishment for its violation confinement in jail and under which the defendants had been sentenced, was repealed by Act No. 77 of August 12, 1925, providing punishment for the first offense by a fine of $25 and for subsequent offenses by imprisonment.

The appellants base this on the general rule according to which where two penal statutes cover the same subject the one favoring the accused should prevail. However, the

jurisprudence cited by the appellants to uphold that rule holds that the said rule is applicable unless there is a statutory provision to the contrary. And section 44 of the Political Code prescribes as follows:

"The repeal of any law creating a criminal offense does not constitute a bar to the indictment or information and punishment of an act already committed in violation of the law so repealed, unless the intention to bar such information and punishment is expressly declared in the repealing act."

This section has been construed recently in the case of *People* v. *Garcia & Rahola, ante,* p. 16, and although it was held to be inapplicable to municipal ordinances, its applicability to the acts of the Legislature was sustained.

For all of the foregoing the judgment is affirmed as regards Pablo Velázquez and reversed in so far as Cecilio Cedrés is concerned.